ANDERSHOCK'S FRUITLAND, INC., and James A. Andershock, Petitioners,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.

No. 96-4238.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1997.

Decided Aug. 10, 1998.

Hartley B. Martyn, Mark A. Amendola, Jennifer Sorce (argued), Martyn & Associates, Cleveland, OH, for petitioners.

Margaret M. Breinholt, James M. Kelly, M. Bradley Flynn (argued), U.S. Department of Agriculture, Office of the General Counsel, Washington, DC, for respondent.

Before FLAUM, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Dealers regulated by the Perishable Agricultural Commodities Act must "truly and correctly ... account and make full payment promptly in respect of any transaction". 7 U.S.C. § 499b(4). The Secretary of Agriculture has defined "promptly" as "within 10 days after the day on which the produce is accepted". 7 C.F.R. § 46.2(aa)(5). Section 8(a) of the PACA, 7 U.S.C. § 499h(a), authorizes the Secretary to revoke the license of any dealer who commits "flagrant or repeated" violations of § 499b. Between May 1994 and May 1995 Andershock's Fruitland failed to pay the agreed purchase prices of 113 lots of agricultural commodities, a total of more than $245,000. It did not finish paying these sums until 1997, almost a year after the administrative hearing, and the bulk of repayment was accomplished by giving Thomas Produce, its biggest creditor, an equity interest in the dealership in lieu of cash. The Secretary revoked its license under the Department's rule that "repeated failures to pay a substantial amount of money over an extended period of time" lead to revocation rather than a lesser sanction. *Caito Produce Co.*, 48 Agric. Dec. 602, 611–13 (1989).

Andershock's Fruitland argued in the administrative proceedings that revocation of its license would be an excessive sanction because nonpayment was attributable to its inability to collect from some of its own customers, rather than to an effort to exploit its suppliers. It contended that for the decade before it encountered cash-flow problems it had been a model dealer. The administrative law judge thought that these were mitigating circumstances and gave Andershock's Fruitland a year from the date of his decision to cover the debt; if it did so, there would be no sanction, but otherwise its license would be revoked. This effectively allowed Andershock's Fruitland to withhold payment for two and a half years (the earliest debts arose in May 1994, and a year from the ALJ's decision was mid-December 1996). The Judicial Officer of the Department of Agriculture, acting as the Secretary's delegate, thought this incompatible with established norms: "The Department's policy is to revoke the PACA license of any Respondent that has not made full payment promptly ... and fails to make such payments by the time of the hearing." *Andershock Fruitland, Inc.*, 55 Agric. Dec. 1204, 1216 (1996) (collecting authority). In an extensive opinion the Judicial Officer explained that prompt payment in earlier years, good-faith efforts to pay suppliers, and the effects of revocation on employees and suppliers are not relevant to the choice of sanction.

Andershock's Fruitland contends that in reaching this conclusion the Department disregarded the "sanctions policy" of *S.S. Farms Linn County, Inc.*, 50 Agric. Dec. 476, 497 (1991). Before *S.S. Farms Linn County* the Department took the view that any substantial failure to follow the requirements of the PACA led to loss of license. *S.S. Farms Linn County* announced that, when devising sanctions to carry out the statutes under its administration, the Department would consider "all relevant circumstances". Andershock's Fruitland maintains that it proffered evidence in mitigation that the Judicial Officer ignored despite its relevance to the sanction. Because an agency must follow its own rules and doctrines until it changes them explicitly, see *Allentown Mack Sales & Service, Inc. v. NLRB*, —— U.S. ——, —— – ——, 118 S.Ct. 818, 826–29, 139 L.Ed.2d 797 (1998), Andershock's Fruitland insists that it is entitled to reinstatement of the ALJ's decision.

But of course "we consider all relevant evidence" does not mean or imply that "all evidence is relevant." Relevance is a matter of substantive policy. So if in a bank robbery prosecution the defendant said that he was poor and needed the money to feed his

family, the court would deem this irrelevant—not because it played no role in the causal chain, but because poverty is not a defense to crime. Poverty *could* be relevant; the Sentencing Guidelines could make the offender's wealth a factor in sentencing; but it would need more than the appearance of the word "relevant" in a formula to make it so. It would need a substantive decision.

*S.S. Farms Linn County* establishes a norm for a portfolio of statutes, such as the Packers and Stockyards Act, the Animal Quarantine Act, the Animal Welfare Act (the statute involved in *S.S. Farms Linn County* itself), and the Perishable Agricultural Commodities Act. A rational decisionmaker may conclude that a particular offense (say, extended nonpayment under the PACA) requires a specific response even if a latitudinarian approach suffices for most. So our initial question is whether the Department of Agriculture has in other nonpayment cases deemed "relevant" circumstances such as the failure of a licensee's customers to pay the licensee. The Judicial Officer said that it has not—that whenever a licensee fails to pay a substantial amount of money over an extended period of time, the license will be revoked. Andershock's Fruitland contends that *S.S. Farms Linn County* displaced this rule, of which *Caito Produce* is a leading exemplar. Yet since *S.S. Farms Linn County* the Department has repeatedly applied *Caito Produce* to nonpayment under the PACA. E.g., *Allred's Produce*, 56 Agric. Dec. 1488 (1997); *Kanowitz Fruit & Produce Co.*, 56 Agric. Dec. 942, 946–48 (1997); *Lloyd Myers Co.*, 51 Agric. Dec. 747, 764–65 (1992). Several decisions are explicit that the approach *Caito Produce* announces for "no-pay" cases is unaffected by *S.S. Farms Linn County*. E.g., *Kanowitz Fruit & Produce Co.*, 56 Agric. Dec. 917, 931–32 (1996); *Havana Potatoes of New York Corp.*, 55 Agric. Dec. 1234 (1996), *affirmed*, 136 F.3d 89 (2d Cir.1997); *Moreno Bros.*, 54 Agric. Dec. 1425 (1995); *Potato Sales Co.*, 54 Agric. Dec. 1409 (1995); *Midland Banana & Tomato Co.*, 54 Agric. Dec. 1239 (1995); *Atlantic Produce Co.*, 54 Agric. Dec. 701, 715 (1995). And *Havana Potatoes of New York*, the only judicial decision that has squarely addressed the question whether as a matter of administrative law *S.S. Farms Linn County* requires the Department to abandon *Caito Produce*, has held that it does not.

*Caito Produce* today acts as an exception to *S.S. Farms Linn County*. Andershock's Fruitland appears to believe that all provisos and exceptions are forbidden as "inconsistent" with the norms that otherwise would apply, but that can't be so. Statutes and opinions (judicial and administrative) teem with reservations, exceptions, provisos, and unless clauses. If these violate the consistency requirement that has been read into the Administrative Procedure Act, the Executive Branch of government might as well go on holiday. But just as the Department could develop the approach of *S.S. Farms Linn County* in common-law fashion, so it may use future cases to develop exceptions to its approach. Exceptions differ from inconsistency, so the only real issue is whether it is within the Department's power to decide that the reasons for nonpayment don't matter if "there have been flagrant or repeated failures to pay a substantial amount of money over an extended period of time." And *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973), answers that question in the affirmative.

The Department has applied a consistent sanctions policy in PACA nonpayment cases since *S.S. Farms Linn County*. Twenty-three cases in volumes 54, 55, and 56 of the Agriculture Decisions, covering 1995 through 1997, cite both *S.S. Farms Linn County* and *Caito Produce*, and the Judicial Officer regularly draws a distinction between "willful, flagrant and repeated violations" that lead to revocation without further ado and less serious violations for which extenuating circumstances are relevant. Far from disregarding *S.S. Farms Linn County*, the Judicial Officer regularly remarks on the limited application of that opinion to nonpayment cases. The Judicial Officer (and thus the Department) believes that *S.S. Farms Linn County* did not displace *Caito Produce* for the class of "willful, flagrant and repeated violations" under the PACA. This distinction suffuses the Agriculture Decisions. Here's an illustrative

738

passage from *Hogan Distributing, Inc.*, 55 Agric. Dec. 622, 632–33 (1996):

I agree with Respondent that the Department's sanction policy, as adopted in *In re S.S. Farms Linn County, Inc., supra,* should be applied in the instant case. *S.S. Farms Linn County, Inc.,* in pertinent part, provides:

[T]he sanction in each case will be determined by examining the nature of the violations in relation to the remedial purposes of the regulatory statute involved, along with all relevant circumstances, always giving appropriate weight to the recommendations of the administrative officials charged with the responsibility for achieving the congressional purpose. 50 Agric. Dec. at 497.

However, the sanction policy in *In re S.S. Farms Linn County, Inc., supra,* does not alter the doctrine in *In re The Caito Produce Co., supra. In re Moreno Bros., supra,* 54 Agric. Dec. at 1442–43. The overriding doctrine set forth in *Caito* is that, because of the peculiar nature of the perishable agricultural commodities industry, and the Congressional purpose that only financially responsible persons should be engaged in the perishable agricultural commodities industry, excuses for nonpayment in a particular case are not sufficient to prevent a license revocation where there have been repeated failures to pay a substantial amount of money over an extended period of time.

This is the Judicial Officer's routine treatment of "repeated failures to pay a substantial amount of money over an extended period of time".

*S.S. Farms Linn County* was issued by Judicial Officer Donald A. Campbell. The current Judicial Officer, and the author of *Andershock's Fruitland,* is William G. Jenson. But we do not have a situation in which one adjudicator, dissatisfied with a predecessor's decision but unwilling to repudiate it openly, has undermined it by stealth. Of the 13 cases decided before June 1996 that treat both *Caito Produce* and *S.S. Farms Linn County* as authoritative, 10 were issued by Campbell and only one—*Andershock's Fruitland*—by Jenson. Obviously the author of

*S.S. Farms Linn County* sees no inconsistency. Nor do we have the sort of drunken-sailor's walk that multi-member bodies may produce. See Maxwell L. Stearns, *Public Choice and Public Law: Readings and Commentary* 257–471 (1997). At any moment there is only one decisionmaker, who can be (and has been) self-consistent.

■ *Glover Livestock* reminded the courts of appeals that "mere unevenness in the application of the sanction does not render its application in a particular case 'unwarranted in law'." 411 U.S. at 188, 93 S.Ct. 1455. That adjuration may have been forgotten by the judges in two cases on which Andershock's Fruitland relies. See *ABL Produce, Inc. v. Department of Agriculture,* 25 F.3d 641 (8th Cir.1994); *Conforti v. United States,* 74 F.3d 838 (8th Cir.1996). In each of these cases the court of appeals substituted its judgment for the Judicial Officer's about the appropriate sanction. But neither *ABL Produce* nor *Conforti* is a nonpayment case under the PACA, so neither case leads us to question the propriety of the Judicial Officer's conclusion that *S.S. Farms Linn County* and *Caito Produce* can live side-by-side, the former as rule and the latter as exception. Appellate courts have on occasion questioned the Department's handling of this reconciliation. Both *Norinsberg Corp. v. Department of Agriculture,* 47 F.3d 1224 (D.C.Cir.1995), and *Frank Tambone, Inc. v. Department of Agriculture,* 50 F.3d 52 (D.C.Cir.1995), upbraided the Judicial Officer for applying *Caito Produce* to a nonpayment case without citing *S.S. Farms Linn County.* But both of these opinions enforced the Department's orders nonetheless, thus recognizing—as the second circuit reiterated in *Havana Potatoes of New York*—that the two lines of administrative precedent are compatible. Even if, as the court of appeals thought in *Norinsberg* and *Frank Tambone,* the Department of Agriculture did not do a very good job at the outset in explaining how *S.S. Farms Linn County* applies to no-pay cases, it has done so since. *Hogan Distributing* is one example; the opinion in *Andershock's Fruitland* is another. In *Havana Potatoes of New York* the second circuit understood the Judicial Officer's opinion in *Andershock's Fruitland* as the definitive statement of the Department's current sanctions policy. And

the court suggested that any different approach might itself offend the statute:

> To be sure, isolated failures to pay within ten days or even substantial delays in payments fully cured after a temporary period of financial difficulty might justify mitigation. However, PACA simply cannot be read to allow the continued licensing of a produce buyer in the face of its persistent failures to comply with the statute's terms because of the produce buyer's long-standing financial difficulties. Persistent violations indicate willfulness in the sense that a persistent violator must know when placing orders for produce that some or all will not be paid for in a timely fashion under PACA. Moreover, financial difficulties are likely to be the cause of PACA prompt-payment violations in virtually all cases, and the statute would have little meaning if the administrative sanction of license revocation were never used where a buyer persistently violates PACA because of an ongoing lack of funds.

136 F.3d at 94. We need not endorse this view to conclude that the Department's current position is a rational implementation of the PACA, and no more is required.

Andershock's Fruitland maintains that the Department can have *S.S. Farms Linn County*, or the flagrant-and-repeated-non-payment policy, but not both. Forcing the Department to elect between the positions (rather than to use a rule-and-exception approach) would be substantive review of the Department's choice of sanctions, meddling forbidden by *Glover Livestock*. Sand in the gears could be a good thing. Most industries get along nicely without a governmental agency that penalizes deadbeats. Probability of payment is just one of many dimensions along which firms compete; businesses willingly put money at risk in exchange for other benefits, such as better service. But the PACA reflects a different approach, which the Department is entitled to implement. The petition for review is

DENIED.