In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2934

Angela Stroe and Marin Stroe,

Petitioners,

v.

Immigration and Naturalization Service,

Respondent.

Petition for Review of an Order
of the Board of Immigration Appeals.

Argued February 21, 2001--Decided June 26, 2001

  Before Posner, Kanne, and Diane P. Wood,
Circuit Judges.

  Posner, Circuit Judge.  An immigration
judge ordered the Stroes deported
("removed" is the current term) because
they were deportable and were ineligible
for asylum. They appealed to the Board of
Immigration Appeals from the denial of
asylum, but the Board dismissed their
appeal because they failed to file a
brief. They moved the Board to reopen the
case and decide their appeal, but the
Board denied their motion. They ask us to
reverse the denial.

  When the Stroes filed their original
appeal with the Board they were
represented by a lawyer named Larry
E.Adkison. The brief was due on January
23, 1995, but Adkison requested an
extension of 30 or 60 days and received a
30-day extension, to February 23. Adkison
did not file the brief, however, until
May 30 and the Board did not receive it
until June 6--the day after the Board had
dismissed the appeal because the brief
hadn't been filed. The motion to reopen,
presented by new counsel, accused Adkison
of having rendered ineffective assistance
in failing to file the brief within the
extended deadline for doing so.

  The Stroes argue that the Board denied
due process of law when it dismissed the
appeal for failure to file a timely brief
without having notified them of the

possibility that dismissal might be a consequence of such a failure. The argument borders on the frivolous. The appeal was dismissed more than three months after the extended deadline for filing a brief had passed. Adkison had asked for a 30- or a 60-day extension of time for filing the brief and had gotten 30 days, which should have contented him and apparently did, for he requested no further extension. The Board was under no duty, either constitutional or statutory, to send him periodic reminders. An appellant's failure to file a brief is a serious procedural default, and, at least when the appellant is represented by counsel, as in the present case, or declines an offer of counsel, dismissal is an appropriate sanction. This is recognized in numerous immigration cases, e.g., Perez-Rodriguez v. INS, 3 F.3d 1074, 1080 (7th Cir. 1993); Castaneda-Suarez v. INS, 993 F.2d 142, 146 (7th Cir. 1993); Huicochea-Gomez v. INS, 237 F.3d 696, 700-01 (6th Cir. 2001); Nazakat v. INS, 981 F.2d 1146, 1148-49 (10th Cir. 1992); Toquero v. INS, 956 F.2d 193, 196–97 (9th Cir. 1992), though denied in a few others, in particular Medrano-Villatoro v. INS, 866 F.2d 132, 134 (5th Cir. 1989), and Escobar-Ramos v. INS, 927 F.2d 482, 483-84 (9th Cir. 1991).

The Stroes also argue that their motion should have been granted because the assistance that Adkison had given them was ineffective. The parties do not discuss the source or nature of a right to effective counsel in deportation proceedings. Expressly left open in our recent decision in Chowdhury v. Ashcroft, 241 F.3d 848, 854 (7th Cir. 2001), the existence of the right is assumed in a number of cases, e.g., Henry v. INS, 8 F.3d 426, 440 (7th Cir. 1993); Hernandez v. Reno, 238 F.3d 50, 55 (1st Cir. 2001); Iavorski v. INS, 232 F.3d 124, 128 (2d Cir. 2000); Dearinger v. Reno, 232 F.3d 1042, 1045 (9th Cir. 2000); Mejia Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999); Michelson v. INS, 897 F.2d 465, 468 (10th Cir. 1990), but only Iavorski actually reversed the denial of relief on this ground. The statements in the other opinions are dicta.

The right assumed in the cases is not absolute, but is limited to situations in which the denial of effective counsel results in a denial of due process. Even

the limited right stands on weak ground, however. Deportation proceedings are civil, and so, as all the cases that we have cited recognize, the Sixth Amendment is not in play. Ambati v. Reno, 233 F.3d 1054, 1061 (7th Cir. 2000). The general rule, certainly, is that civil litigants have no constitutional right to the assistance of counsel, Forbes v. Edgar, 112 F.3d 262, 264 (7th Cir. 1997); Young v. Murphy, 90 F.3d 1225, 1235 (7th Cir. 1996); DeSilva v. DiLeonardi, 181 F.3d 865, 868 (7th Cir. 1999), and therefore no constitutional right to effective assistance of counsel. E.g., Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Anderson v. Cowan, 227 F.3d 893, 901 (7th Cir. 2000); Bell v. Eastman Kodak Co., 214 F.3d 798, 802 (7th Cir. 2000); Barkauskas v. Lane, 946 F.2d 1292, 1294 (7th Cir. 1991); Prihoda v. McCaughtry, 910 F.2d 1379, 1386 (7th Cir. 1990); United States v. 87 Blackheath Rd., 201 F.3d 98 (2d Cir. 2000) (per curiam). So the fact that like other civil litigants an alien in a deportation proceeding is allowed to hire a lawyer at his own expense, 8 U.S.C. sec. 1362, gives him no right to complain if the lawyer he hires is ineffective.

The nonright to effective assistance of counsel in civil cases is the rule even when the proceeding though nominally civil involves liberty or even life, as in a capital habeas corpus case, where the Supreme Court has held that there is no right to effective assistance of counsel. Murray v. Giarratano, 492 U.S. 1 (1989); see also Pennsylvania v. Finley, 481 U.S. 551 (1987). None of the cases that assume there is a right to effective assistance of counsel in deportation proceedings considers the bearing of Murray or Finley (which seem, incidentally, to have cut back on earlier cases according a Fifth Amendment right to counsel when physical liberty is at stake in a noncriminal proceeding, see Lassiter v. Dept. of Social Services, 452 U.S. 18, 31-32 (1981); In re Gault, 387 U.S. 1, 36 (1967)) or of any of the other decisions that hold that civil litigants have no right to effective assistance of counsel beyond what the law of legal malpractice grants them. The discussion of the source of the assumed right in the deportation cases is distinctly perfunctory.

It may help to distinguish two situations. In one the immigration bureaucracy finds a lawyer for an alien. It may have an obligation to find a competent lawyer, as we suggested in DeSilva v. DiLeonardi, supra, 181 F.3d at 869, in the same way that a state that puts a child in a foster home  has to choose competent foster parents even though it may have no legal obligation to help the child in the first place. In the second situation, which is the usual and the present case, the alien finds his own lawyer. Then one would think that as in other civil cases the lawyer's shortcomings would be imputed to the client, Link v. Wabash R.R., 370 U.S. 626, 633-34 (1962), leaving the latter with a malpractice action rather than a right to continue litigating against the original adversary (the INS). In criminal cases, it is true, the distinction is erased; the Sixth Amendment is interpreted to impute even a retained lawyer's goof-ups to the state, Cuyler v. Sullivan, 446 U.S. 335, 342-45 (1980)--but then the Sixth Amendment creates a right to counsel, whereas all that the due process clause requires, so far as procedure is concerned, is notice and an opportunity for a hearing. Nothing in the clause implies a guarantee that the litigant or his lawyer will take good advantage of the opportunity.

We suggested in DeSilva v. DiLeonardi, supra, 181 F.3d at 869, an extradition case, that it might be arguable that more process and protection are due when the INS acts as a "prosecutor" in deportation cases. Cf. Cuyler v. Sullivan, supra, 446 U.S. at 343. That may be thought the outermost limit of moving the Fifth Amendment in the direction of the Sixth. The Stroes' situation, however, does not involve any issue on which the INS bears the burden of persuasion. They concede deportability and seek a favorable exercise of discretion with respect to asylum.

This discussion shows that the question whether there is ever a constitutional right to counsel in immigration cases is ripe for reconsideration. But not in this case. The Board of Immigration Appeals has decided that ineffective assistance of counsel is a valid ground for reopening a deportation case in "egregious circumstances." In re Lozada,

19 I&N 637 (BIA), aff'd, 857 F.2d 10 (1st Cir. 1988); In re B-B, Interim Decision 3367, 1998 WL 694640 (BIA 1998). We may assume, without having to decide because the issue is not raised, that the Board's decision to allow aliens to claim ineffective assistance of counsel as a basis for reopening deportation proceedings is within the scope of the Board's discretionary authority even though it probably is not compelled by statute or the Constitution. The Board's failure to give any reason for the decision troubles us, however; we worry that the Board may not be cognizant of the relevant precedents governing the right to counsel in civil cases. But that, too, is an issue for another day.

Concerned, however, with the use of delay as a common tactic in resisting deportation, because the longer the alien is in this country the more likely he is to accrue "equities" that will make it more difficult to deport him, INS v. Rios-Pineda, 471 U.S. 444, 450 (1985); Stone v. INS, 514 U.S. 386, 399–400 (1995); INS v. Doherty, 502 U.S. 314, 323 (1992); Guan v. INS, 49 F.3d 1259, 1262–63 (7th Cir. 1995); Rhoa-Zamora v. INS, 971 F.2d 26, 33 (7th Cir. 1992); Lara v. Trominski, 216 F.3d 487, 496 (5th Cir. 2000); Bernal-Vallejo v. INS, 195 F.3d 56, 64 (1st Cir. 1999); Stewart v. INS, 181 F.3d 587, 595 (4th Cir. 1999); Shaar v. INS, 141 F.3d 953, 957 (9th Cir. 1998); Saiyid v. INS, 132 F.3d 1380, 1384 (11th Cir. 1998), the Board in In re Lozada, supra, created an ingenious screen to prevent strategic invocation of ineffective assistance. The screen requires that a motion to reopen deportation proceedings because of ineffective assistance of counsel be accompanied by (1) an affidavit detailing the agreement between the movant and counsel; (2) a showing that the allegations of ineffective assistance were communicated to counsel and that he was given an opportunity to respond to them; and (3) a statement as to whether a complaint was filed against counsel with the appropriate disciplinary authorities and if not why not. The courts, ours included, have uniformly approved this initiative of the Board's. Henry v. INS, supra, 8 F.3d at 440; Hernandez v. Reno, supra, 238 F.3d at 55; Lara v. Trominski, supra, 216 F.3d at 497-98; Lata v. INS, 204 F.3d 1241, 1246 (9th Cir. 2000);

Bernal-Vallejo v. INS, supra, 195 F.3d at 64; Anin v. Reno, 188 F.3d 1273, 1275 (11th Cir. 1999) (per curiam); Stewart v. INS, supra, 181 F.3d at 596; Esposito v. INS, 987 F.2d 108, 110-11 (2d Cir. 1993).

The Board held that the Stroes in moving to reopen the deportation proceeding on the basis of Adkison's alleged ineffective assistance had satisfied (1), but not (2) or (3). Regarding (2), the Stroes had notified Adkison with regard to his failure to file the brief on time, but not with regard to other claims of ineffective assistance on which they based the motion to reopen, including failure to present essential facts bearing on the Stroes' claim for asylum-- their only defense to being deported. By not giving Adkison an opportunity to comment on this claim, the Stroes denied the Board of Immigration Appeals an opportunity to evaluate the significance of Adkison's failure to file a brief. Suppose Adkison had good reasons not to present additional facts to the immigration judge. Then, even if Adkison had filed a timely brief, it might be clear that the appeal would have failed for want of a solid factual basis for the claim for asylum.

Regarding (3), the Stroes point out correctly that they explained why they had not filed a complaint with the bar disciplinary authorities, and they argue that that is all that the third requirement of Lozada requires. They said (and remember they were represented by new counsel) that Adkison "did prepare and file a brief in our case, albeit several months past the deadline. He did formally request an extension of the deadline from the Office of the Immigration Judge, but he did not receive a response. We feel that while he was negligent in not pursuing his request for an extension of time, he did perform the service that we paid him to do." This sounds fishy. Adkison did not perform the service for which the Stroes had paid him. They had paid him to brief the appeal. By filing an untimely brief, which became the basis of the Board's dismissal of the appeal without reaching the merits, he defeated the purpose of his retention. The second sentence quoted above, about his not receiving a response to his request for an extension, makes no sense, because he received an extension

of 30 days. Had he not received a response, he would have had either to inquire about the status of his request or file the brief by January 23, neither of which he did.

So the Board was entitled to reject the Stroes' explanation for not filing a complaint against Adkison. It was not a good explanation. The Stroes point out that, interpreted literally, the third requirement of Lozada doesn't require a good explanation for the failure to file a disciplinary complaint, just an explanation. And that is true--literally. But the requirement would be empty, indeed senseless, if it could be satisfied by a bad explanation. Suppose the Stroes had said they hadn't filed a complaint because Adkison had told them that by not filing a brief he had actually helped them by setting the stage for their seeking a further appeal on the basis of his ineffective assistance. According to the logic of the Stroes' position, that explanation would satisfy Lozada.

Yet if the Board, by refusing to accept the explanation that the Stroes did give, violated any of the rules that it had laid down in Lozada, it would be no defense to the Board's action that the rule was dumb. Although an administrative agency is permitted to change rules it created in common law fashion, that is, as a byproduct of adjudication--and that is the character of the Lozada rules--by the same, common law method, it is not permitted to do so without a reasoned explanation for its change of mind. E.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29, 42 (1983); Miami Nation of Indians of Indiana, Inc. v. U.S. Dept. of Interior, No. 00-3465, slip op. at 8-9 (7th Cir. June 15, 2001); Castaneda-Suarez, supra, 993 F.2d at 146; Schurz Communications, Inc. v. FCC, 982 F.2d 1043, 1053 (7th Cir. 1992); Salameda v. INS, 70 F.3d 447, 450 (7th Cir. 1995); Wisconsin Valley Improvement Co. v. FERC, 236 F.3d 738, 748 (D.C. Cir. 2001); Henry v. INS, 74 F.3d 1, 6 (1st Cir. 1996). That is, the agency cannot, as a legislature can, reverse course without any explanation; its about-faces must be reasoned; in this respect, the legislative-judicial hybrid, which is what an administrative agency is, is assimilated to a court, which,

under the doctrine of stare decisis, is likewise required to give reasons for abandoning a precedent. Therefore, since the Board in this case purported to be applying rather than changing the Lozada rules, its denial of the motion to reopen cannot be sustained if that denial violated the rules. See, e.g., Allentown Mack Sales & Service, Inc. v. NLRB, 522 U.S. 359, 374 (1998); Morton v. Ruiz, 415 U.S. 199, 235 (1974); Andershock's Fruitland, Inc. v. U.S. Dept. of Agriculture, 151 F.3d 735, 736 (7th Cir. 1998); Pope v. Shalala, 998 F.2d 473, 486 (7th Cir. 1993), overruled on other grounds, Johnson v. Apfel, 189 F.3d 561 (7th Cir. 1999); Gonzalez v. Reno, 212 F.3d 1338, 1349 (11th Cir. 2000).

The rules were not violated, even if we ignore the fact that they required the Board to deny the motion simply because the Stroes had failed to comply with the second rule. The third rule requires an explanation that the Board unless unreasonable would accept, Lara v. Trominski, supra, 213 F.3d at 498; Esposito v. INS, supra, 987 F.2d at 111; In re Rivera-Claros, Interim Decision 3296, 1996 WL 580694 (BIA 1996)-- requires, in short, a good explanation, not any old explanation. The explanation the Stroes (represented, be it remembered, by counsel) offered for not having complained about Adkison's stunning default was unsatisfactory and allowed the Board to suspect collusion between them and him.

We are mindful that some cases allow an alien who has not complied with the Lozada rules to establish an infringement of the supposed due process right to effective assistance of counsel nevertheless. See Castillo-Perez v. INS, 212 F.3d 518, 526 (9th Cir. 2000); Escobar-Grijalva v. INS, 206 F.3d 1331, 1335 (9th Cir. 2000); Figeroa v. INS, 886 F.2d 76, 78-79 (4th Cir. 1989); see also Lopez v. INS, 184 F.3d 1097, 1099-1100 (9th Cir. 1999). These are mainly Ninth Circuit cases; that court's hostility to the Board of Immigration Appeals is well known, see Victor Romero, "On Elian and Aliens: A Political Solution to the Plenary Power Problem," 4 N.Y.U. J. Legis. & Pub. Pol'y 343, 347 n. 23 (2000-2001); David McKinney, "Congressional Intent, the Supreme Court and Conflict Among the Circuits Over Statutory

Eligibility for Discretionary Relief Under Immigration and Naturalization Act sec. 212(c)," 26 U. Miami Inter-Am. L. Rev. 97, 110 n. 78 (1994); Peter Schuck & Theodore Hsien Wang, "Continuity and Change: Patterns of Immigration Litigation in the Courts, 1979-1990," 45 Stan. L. Rev. 115, 175-76 (1992), and doubtless explains the large number of Ninth Circuit immigration cases reversed by the Supreme Court. See, e.g., INS v. Aguirre-Aguirre, 526 U.S. 415 (1999); Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471 (1999); INS v. Yang, 519 U.S. 26 (1997); Reno v. Flores, 507 U.S. 292 (1993); INS v. Elias-Zacarias, 502 U.S. 478 (1992); INS v. National Center for Immigrants Rights, Inc., 502 U.S. 183 (1991); INS v. Pangilinan, 486 U.S. 875 (1988); INS v. Abudu, 485 U.S. 94 (1988); INS v. Rios-Pineda, supra; INS v. Lopez-Mendoza, 468 U.S. 1032 (1984); INS v. Delgado, 466 U.S. 210 (1984); INS v. Phinpathya, 464 U.S. 183 (1984); Landon v. Plasencia, 459 U.S. 21 (1982); INS v. Miranda, 459 U.S. 14 (1982) (per curiam); INS v. Jong Ha Wang, 450 U.S. 139 (1981) (per curiam). But that is an aside. Given the doubts about whether there is any right to counsel in deportation cases save as the Board in its discretion may recognize, we have difficulty understanding how an alien who fails to comply with the Board's criteria can succeed in challenging its decision. In any event, the Stroes argue only that they did comply with the Lozada rules.

The third Lozada rule, by the way, has a further purpose beyond just deterring collusion between the alien and his or her lawyer. The deficiencies of the immigration bar are well known, see, e.g., Lara v. Trominski, supra, 216 F.3d at 497; Escobar-Grijalva v. INS, supra, 206 F.3d at 1335; Katy Motiey, "Ethical Violations by Immigration Attorneys: Who Should Be Sanctioning?" 5 Geo. J. Legal Ethics 675, 676-80 (1992); cf. Hilary Sheard, "Ethical Issues in Immigration Proceedings," 9 Geo. Immigration L.J. 719, 739 (1995), and a major purpose of the third rule is to enlist the clients of that bar in efforts to raise its ethical standards by putting pressure on immigrants to report to the appropriate disciplinary authorities conspicuous failures of the immigration bar to comply with minimum norms of professional conduct. Adkison's booting of the appeal

fell well below those norms and should certainly have been brought to the attention of the bar disciplinary authorities. We shall send a copy of our opinion to the Illinois Attorney Registration and Disciplinary Commission for appropriate action, Adkison being a member of the Illinois bar.

Affirmed.


DIANE P. WOOD, Circuit Judge, concurring in the judgment. While I agree with the ultimate outcome the majority reaches, and I further agree with its interpretation and application of the rule announced in In re Lozada, 19 I. & N. Dec. 637 (BIA 1988), aff'd, 857 F.2d 10 (1st Cir. 1988), I cannot associate myself with the majority's dicta with respect to the due process dimension of the right to counsel in immigration proceedings, nor with its rather pointed criticism of the Ninth Circuit's immigration jurisprudence. The majority acknowledges, ante at 4, that the issue of a constitutional right to counsel in immigration cases is not ripe in this case, and I agree. In my opinion, that renders the subsequent discussion of that point unnecessary and, indeed, undesirable. I find its comments about the Ninth Circuit to be equally beside the point. Whatever the Ninth Circuit may think about the Lozada rules, it is clear that this court has approved them in the past. See Henry v. INS, 8 F.3d 426, 440 (7th Cir. 1993). As long as we are content to adhere to our own prior jurisprudence, we need not delve deeply into the views of our sister circuits. Moreover, all manner of games are possible with statistics, and I note that even if there have been several Ninth Circuit immigration cases reversed by the Supreme Court, that Circuit hears about half of this country's INS-related claims. (According to the Administrative Office of the United States Courts, the Ninth Circuit heard 910 of the 1723 INS cases docketed in the United States Courts of Appeals between October 1, 1999 and September 30, 2000, while our court heard just 60). That court's win/loss record in the Supreme Court thus may not be probative of very much.

The right to counsel point, as the INS itself has recognized, is more complex. I do not understand the majority to be taking the unsupportable position that the due process clauses of the Fifth and Fourteenth Amendments do not apply to civil cases, or (in the case of the Fifth Amendment) to immigration proceedings. Such a position would obviously be flatly inconsistent with a long line of Supreme Court decisions. See, e.g., American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Gilbert v. Homar, 520 U.S. 924, 931-32 (1997); United States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993); Mathews v. Eldridge, 424 U.S. 319, 340-49 (1976). The only question therefore is whether, under some narrow set of circumstances, matters relating to the existence or quality of legal representation may ever rise to the level of a due process violation. I have no quarrel with the well established proposition that the Sixth Amendment "right to counsel," and hence the test of Strickland v. Washington, 466 U.S. 668 (1984), does not apply in non-criminal proceedings. But, as the Supreme Court constantly reminds us, due process is a flexible concept, and I see no reason to make a categorical assumption that it will never be implicated in a counsel-related problem in an immigration case.

The labels "civil" and "criminal" for cases are imprecise in any event. While we might recognize a suit under the Federal Tort Claims Act as definitely "civil," and a drug prosecution for distribution of cocaine as definitely "criminal," there are many areas of federal law where this distinction becomes blurred. Habeas corpus is one, civil forfeitures in conjunction with criminal prosecutions is another, and immigration cases may well be a third. I note as well that our usual assumption about the ease with which someone dissatisfied with legal representation may bring a legal malpractice action is contestable in the kind of case the Stroes theoretically have. At best, they must conduct it from foreign shores. Most foreign plaintiffs might be able to travel to the United States to participate in their own lawsuit and to assist later counsel, but that option will not be available to the Stroes unless or until they obtain a new right to enter this country (a high hurdle, in

their case). I see nothing unreasonable about the INS's recognition that, lurking in some small number of its cases, there might be a genuine due process problem of constitutional dimension, and not just a problem of agency practice.

In any event, as the majority ultimately concedes, this is a debate for another day. As I noted earlier, I agree that the INS's Lozada rule is a legally acceptable screen for weeding out cases of alleged ineffective assistance of counsel that cannot possibly rise to the level of a due process violation. I also agree that petitioners must do more than come up with any reason at all for their failure to file a complaint with bar authorities; their reason must be a good one, and the Board was entitled to conclude that the reason the Stroes gave did not meet that standard. For those reasons, I concur in the judgment of the court.