**Jarnail SINGH, Petitioner,**

v.

**John D. ASHCROFT, Respondent.**

No. 02–4078.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 30, 2003.

Decided July 20, 2004.

Godfrey Y. Muwonge, Milwaukee, WI, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, M. Jocelyn Lopez-Wright, Department of Justice, Washington, DC, for Respondent.

Before BAUER, POSNER, and DIANE P. WOOD, Circuit Judges.

### ORDER

Jamail Singh, a resident and citizen of India, has petitioned for review of the Board of Immigration Appeals' decision to leave undisturbed the Immigration Judge's decision to order his removal from the United States because he failed to appear at his removal hearing. Singh asserts that he failed to appear because (1) his attorney told him that he was not required to attend the hearing, and (2) he had "exceptional circumstances" that justified his absence from the hearing. After filing unsuccessful motions to reopen and reconsider before the IJ, as well as an unsuccessful appeal to the BIA, Singh petitions this court for review.

### I

Singh illegally entered the United States in December 1993. Although the timing is unclear from the record, Singh filed an application for asylum some time between his arrival and April 1994. In May 1999, while awaiting his asylum hearing, a robbery occurred at the convenience store where Singh worked. The robber shot Singh four times and killed Singh's co-worker. Six months later, Singh was diagnosed with Post Traumatic Stress Disorder (PTSD).

The former Immigration and Naturalization Service granted Singh an interview for his asylum application in February 2000. In April, after the interview, the INS referred Singh's asylum application to an IJ on the ground that "[a] preponderance of the evidence establishes that country conditions have changed to such an extent that [he does] not have a well-founded fear of persecution." Later, in August 2000, the INS served Singh with a Notice to Appear based on charges of removability. At the hearing in August, Singh appeared along with his lawyer, Paul Konner. The IJ decided to set a hearing for January 2001 on the merits of both removability and Singh's request for asylum.

At the January hearing, Konner appeared alone on behalf of Singh. Based on

Singh's failure to appear personally, the IJ entered an *in absentia* removal order against him. After the hearing, Konner attempted to file a motion to reopen the removal order based on "exceptional circumstances," but the IJ returned the motion without ruling on it because Konner did not pay the filing fee or sign the certificate of service. At that point, Konner bowed out of the case and referred it to Godfrey Muwonge, another immigration lawyer who (Konner said) normally handled his appeals. Before a new motion to reopen could be filed, Singh received a "bag and baggage" order stating that he was to appear in Chicago and would be removed on February 6, 2001. Singh failed to comply this order, explaining later that he believed, based on advice that Konner had given him before Muwonge took over, that he did not have to do so.

On February 12, 2001, Muwonge refiled the motion to reopen the case and to rescind the removal order. As grounds for the new motion, he asserted that Singh had not attended the January 2001 hearing because (1) Konner had told him that his attendance was not required, and (2) Singh was suffering from a serious illness, PTSD. The IJ denied the motion because Singh failed to establish the *prima facie* case for ineffective assistance of counsel in the immigration context as required by *Matter of Lozada*, 19 I & N Dec. 637, 639 (BIA 1988), *aff'd* 857 F.2d 10 (1st Cir.1988), because he had never provided Konner with notice of the allegations against him. The IJ also found that Singh had failed to present any evidence of an illness serious enough to establish the "exceptional circumstances" required to excuse his attendance.

Singh then filed a motion to reconsider, asserting that the IJ had overlooked evidence tending to show that Konner had indeed received notice of Singh's allega-

tions by certified mail. But the IJ denied the motion and reiterated that the evidence showed neither ineffective assistance of counsel nor an exceptional circumstance. Next, Singh appealed to the BIA, arguing that the IJ's decisions to deny both his motion to reopen and his motion to consider the denial of reopening incorrectly applied the law. The BIA affirmed the IJ's decision, issuing a written order that addressed only the issue whether Singh could show that his failure to appear resulted from exceptional circumstances. Singh then appealed to this court.

## II

We consider first the IJ's ruling with respect to Singh's motion to reopen the removal order. The standard of review for an order entered *in absentia* is abuse of discretion. *Ursachi v. INS*, 296 F.3d 592, 594 (7th Cir.2002). Because the BIA affirmed the IJ's decision without presenting any substantial analysis of its own, this court reviews the IJ's decision directly. *See id.; Pop v. INS*, 270 F.3d 527, 529 (7th Cir.2001). In the case of removal orders entered *in absentia*, review is limited to three points: (1) the validity of the notice provided to the alien, (2) the reasons for the alien's failure to attend the proceeding, and (3) whether or not the alien is removable. 8 U.S.C. § 1229(b)(5)(D); *Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir.1999). Singh's appeal focuses on the second of these factors, namely, the reasons why he did not attend the removal hearing.

## A

■ The first reason Singh offers is the ineffectiveness of the assistance he received from his lawyer, Konner. Singh argues that Konner was ineffective in four ways: first, in telling him that he did not need to attend the removal hearing, because Konner was going to try to obtain a

continuance; second, in making inconsistent representations to the IJ about the reason why Singh was not there; third, in filing a patently defective motion to reopen that lacked signatures on the certificate of service and did not include the requisite filing fee; and fourth, in telling him (astonishingly if true) that he was not required to appear in Chicago as ordered in the bag and baggage letter because Konner had filed the motion to reopen. After Singh filed a grievance with the Wisconsin Board of Lawyer Regulation (WBLR), Konner filed a response contesting these allegations.

When ineffective assistance of counsel is the basis on which an alien seeks to have a removal order reopened or reconsidered, the alien must satisfy three requirements: (1) she must submit an affidavit describing the agreement between the alien and the attorney; (2) she must show that the allegations of ineffective assistance of counsel were communicated to counsel and that counsel was given an opportunity to respond; and (3) she must state in the motion whether she has reported counsel's conduct to the appropriate authorities and if not, why not. *Stroe v. INS*, 256 F.3d 498, 501 (7th Cir.2001) (citing *Lozada*, 19 I & N Dec. at 639). Although this court has been cautious in recognizing any constitutional right to counsel in immigration cases (which, to the extent it exists, must be based on the Due Process clause rather than the Sixth Amendment), we have endorsed the *Lozada* approach as one that helps to prevent strategic claims of ineffective assistance. *Stroe*, 256 F.3d at 504. Several other circuits have warned that a rigid application of *Lozada* may be inappropriate, as long as there is substantial compliance with its criteria. See *Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 133 (3d Cir. 2001); *Castillo–Perez v. INS*, 212 F.3d 518, 526 (9th Cir.2000). We need not decide here, however, what the difference

might be between "strict" compliance and "substantial" compliance might be, because Singh met neither standard.

Although Singh argues that he submitted evidence satisfying all three aspects of the *Lozada* decision, a close look at the record reveals that he offered proof of only the first and third requirements. He submitted an affidavit describing the agreement between Konner and himself, and he submitted a copy of the grievance he filed against Konner with the WBLR. But he failed to produce evidence that Konner had been notified of the allegations and given an opportunity to respond at the right time and in the right place. He referred to a certified mail receipt (# 7099 3400 0006 9888 9932) in his motion to reopen, but he did not furnish a copy of the actual receipt. Although he has attached a copy of something purporting to be this receipt to his brief in this court, it is plain that this is too little, too late. We may consider only evidence that was part of the administrative record, see 8 U.S.C. § 1252(b)(4)(A); see also *Yadegar–Sargis v. INS*, 297 F.3d 596, 599 (7th Cir.2002). Notice to the lawyer is hardly a mere formality for purposes of the *Lozada* rule. Under the circumstances, with nothing but an unsupported allegation of notice before him, the IJ did not abuse his discretion in denying Singh's motion to reopen the removal order on the ground of ineffective assistance of counsel.

## B

■ Alternatively, Singh argues that his absence from the removal hearing was justified by "exceptional circumstances." This phrase refers to something beyond the control of the alien, including, but not limited to, serious illness and death. *Ursachi*, 296 F.3d at 594; 8 U.S.C. § 1229a(e)(1). The BIA has not defined the term "serious illness," but it has sug-

gested that such an illness can be documented in various ways, including with a letter describing the seriousness of the illness or affidavits attesting to both severity and attempted remedies. *In re J–P–,* 22 I & N Dec. 33, 35 (BIA 1998).

Singh's theory was that his PTSD amounted to an illness serious enough to excuse his presence at the hearing. He submitted a letter from his doctor, Dr. Tannan, dated September 2000, to support his position. But that letter is of no help, both because it draws no connection between Singh's illness and his ability to attend something like the January hearing, nor does it suggest that Singh's condition had worsened significantly since August 2000, when he attended an earlier hearing. The IJ did not abuse his discretion by denying the motion to reopen on this ground either.

## II

Singh's arguments addressed to his motion to reconsider are largely duplicative of his arguments with respect to the motion to reopen the decision, and thus we do not need to discuss them at length. In the reconsideration motion, he asserts that he did attach the certified mail receipt showing notice to Konner to his motion to reopen, but there is no evidence in the record to support this. What he clearly did furnish was a copy of the letter Konner wrote to the WBLR responding to his allegations. He did not argue either before the immigration authorities or before this court that this letter itself should be considered as circumstantial evidence that Konner had adequate notice under *Lozada.* Had he made such an argument, it would have been important to investigate whether Konner had full and accurate knowledge of the allegations, such that the letter was strong enough evidence the second *Lozada* requirement that the IJ was compelled (not just permitted) to accept it as such. While we consider this to be close to the line, we think the Board is entitled to take the position that a lawyer's response to an inquiry from a disciplinary board, in the absence of a clear indication that the lawyer learned of the proceeding directly from the aggrieved alien, does not compel a finding that adequate notice to the lawyer was furnished. At least in these circumstances, in which Singh has not even raised this theory on appeal, we find no abuse of discretion in the IJ's decision to reject the motion for reconsideration.

## III

Last, Singh argues generally that the BIA overlooked a number of arguments that he raised in his notice of appeal. Because his brief failed to develop these points or to support them with legal authority, we do not reach them. Nor do we have anything to say about Singh's attack on the quality of the BIA's review, which in our view was adequate under the deferential standard of review that applies here. The petition for review is DENIED.