**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 19, 2005
Decided January 13, 2006

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 04-1591

| | |
|---|---|
| ARMANDO GONZALEZ<br>    *Petitioner*, | On Petition for Review of an Order<br>of the Board of Immigration Appeals |
| *v.* | No. A95-185-406 |
| ALBERTO R. GONZALES,<br>    *Respondent*. | |

**O R D E R**

An immigration judge ("IJ") in Chicago ordered Armando Gonzalez removed *in absentia* after he failed to appear for his asylum hearing. Gonzalez, a Mexican national whose asylum application was filed in California, moved to reopen on the basis that he did not know about the hearing date, or even that his case had been transferred to Chicago; he argued that a nonlawyer "professional legal consultant" hired to handle his immigration affairs failed to apprise him of the hearing date, and that this "fraud" by the consultant constituted "exceptional circumstances" warranting reopening his case. The IJ denied the motion to reopen, and the Board of Immigration Appeals ("BIA") affirmed. We deny Gonzalez's petition for review.

**I.**

Gonzalez has lived in California since entering the United States without inspection in 1988.  Gonzalez's wife is also here illegally.  Gonzalez has family members who still reside in Mexico, but Gonzalez and his wife have two minor sons who are United States citizens.  In January 2001, an application for asylum was filed on behalf of Gonzalez in Los Angeles.  The application bears what appears to be Gonzalez's signature; identifies his "residence" and "mailing address" as 5554 Reseda Boulevard in Tarzana, California; and includes a representation that no one other than his wife or children helped prepare the application.  As grounds for asylum, the application explains that Gonzalez desires "a better life" for himself and his family, and that "the only possible way to achieve this, is to work hard and be allowed to continue to live here with [the government's] permission."

On January 2, 2002, the Immigration and Naturalization Service ("INS") (now the Bureau of Citizenship and Immigration Services in the Department of Homeland Security) responded to the asylum application by mailing to the listed residential address a notice directing Gonzalez to appear on February 13 before an IJ in Los Angeles to show cause why he should not be removed.  A motion to change venue was then filed with the Immigration Court in Los Angeles on January 30, 2002, claiming that Gonzalez had moved to Wheatfield, Indiana.  The first line of that motion makes reference to counsel, but the document is not signed by a lawyer and otherwise appears to be pro se.  The motion acknowledges the February 13 hearing date and, like the asylum application, bears what appears to be Gonzalez's signature.  On February 7, 2002, the Immigration Court in Los Angeles granted this motion and ordered that venue be changed to Chicago.

On February 13, 2002, the Immigration Court in Chicago mailed Gonzalez notice that a master hearing was scheduled in Chicago on April 4.  The notice lists for Gonzalez the Wheatfield, Indiana, address that was listed on his January 2002 motion to change venue.  A second motion to change venue was then filed with the Immigration Court in Chicago on March 20, stating that Gonzalez had moved a few days earlier from Indiana to Pasadena, California.  This motion, from the same template as the first, likewise bears what appears to be Gonzalez's signature and acknowledges the April 4 hearing date.  No ruling was ever entered on this motion.

On April 4, 2002, the Immigration Court in Chicago held the master hearing for Gonzalez's case.  Gonzalez failed to appear, and the IJ ordered him removed *in absentia*.

On September 30, 2002, Gonzalez, through counsel, filed with the IJ in Chicago a motion to reopen the removal proceedings. In this motion, which is supported by his affidavit, Gonzalez makes a series of factual allegations that underlie the case now before this court:

Gonzalez alleges that in January 2001 he met Joel Freddy, whom he understood to be a notary public and a "professional legal consultant" doing business as L&J Professional Legal Services. Freddy told Gonzalez that, for a fee, Freddy would hire an attorney to obtain a "work permit" for Gonzalez and process "immigration applications" for him and his wife. Gonzalez executed a "payment contract" with Freddy, who "filled out an application" in Gonzalez's presence using information that Gonzalez supplied about his family, his residence, and his past employment. However, Gonzalez's "residential" address listed on the application—5554 Reseda Boulevard in Tarzana, California—was also the business address for L&J. Gonzalez further alleges that he met briefly with Freddy again in June 2001, but after that his repeated attempts to check with Freddy about the status of his application went unanswered. In all, L&J apparently billed Gonzalez over $6,000 for an "Adjustment of Status."

Meanwhile, the story continues, in early March 2002 Gonzalez turned to neighbor Conrad Joyner (who is also a lawyer) for assistance in finding information about his application. Joyner called L&J, but no one there would talk to him. Then, on March 18, 2002, Joyner accompanied Gonzalez to the immigration office in Los Angeles where Gonzalez had been told to report for an "employment card." Freddy met them there at Gonzalez's request, but became angry at seeing Joyner and disappeared. According to Gonzalez, Joyner learned at the Los Angeles office that Gonzalez's file was not there, and afterward Joyner made inquiries at other locations. On April 10, 2002, Joyner was able to obtain Gonzalez's immigration file from the INS. The file, which Gonzalez received in July 2002, revealed the legal activity in Gonzalez's case, all of which, Gonzalez claims in his affidavit, had been unknown to him. In his affidavit, Gonzalez specifically denies knowing anything about the two motions to change venue. At this point Gonzalez hired present counsel; before filing the motion to reopen, counsel assisted Gonzalez in filing complaints against Freddy with the district attorney and Better Business Bureau in Los Angeles.

Based on these allegations, Gonzalez argued to the IJ that his case should be reopened because Freddy's "elaborate scheme" constituted "exceptional circumstances," *see* 8 U.S.C. § 1229a(b)(5)(C)(I), excusing his failure to appear. Gonzalez did not argue that he had a legitimate claim to asylum, but asserted without elaboration that he was "prima facie eligible" for cancellation of removal

under 8 U.S.C. § 1229b(b)(1).  The government, without disputing the factual allegations in Gonzalez's supporting affidavit, argued in a one-page opposition that his motion should be denied:

> While it is unfortunate that respondent relied on the services of a notary to handle his immigration case, the immigration judge cannot excuse the respondent's failure to appear for his hearing for this reason. The Board of Immigration Appeals has established a set of factors that must be met in order for a respondent to make a claim for ineffective assistance of counsel.  See, Matter of Lozada, 191 I & N Dec. 638 (BIA 1988).  This holding does not, however, extend to notaries.  Therefore the Motion to Reopen should be denied.

On October 22, 2002, the IJ denied the motion to reopen.  Notwithstanding that the government had not contested the factual allegations in Gonzalez's motion, the IJ stated in his handwritten order that "[t]he Respondent sign[ed] a motion to change venue" from California to Chicago, but failed to show in Chicago after he "was duly notified to appear at his last address provided."  The IJ then denied the motion "[f]or the reason set forth in [the government's] response which the Court adopt[s]."

Gonzalez appealed to the BIA and renewed his "exceptional circumstances" argument.  In his December 2002 brief, he stated specifically that he "never received notice of his hearing in Los Angeles or Chicago because Joel Freddy, a non-attorney providing 'professional legal services' filed a motion to change venue in this case . . . without Mr. Gonzalez's knowledge."  In a supplemental brief filed the following June, Gonzalez added that he wrote Freddy in January 2003 demanding an explanation regarding L&J's activities with his case, but never got a response.  The government again submitted a one-page response, this time simply declaring without analysis that the IJ had "considered all relevant evidence" and correctly "applied the applicable law."

In February 2004, the BIA issued a one-judge order dismissing the appeal. The BIA explained that "the respondent had notice of his hearing" since he "filed a pro se motion to change venue," and acknowledged in that motion that the hearing date in Chicago was set for April 4, 2002.  The BIA added that it was "not persuaded that exceptional circumstances prevented" Gonzalez from attending his hearing: "While the respondent claims that he received ineffective assistance from an individual who provided legal services, his change of venue indicated he acted on his own behalf, pro se."

**II.**

Gonzalez presses two points before this court: (1) *he* never personally received notice of the April 4 hearing in Chicago because notice was mailed to Freddy; and (2) Freddy's alleged fraudulent conduct qualified as "exceptional circumstances." In cases such as this where the BIA's opinion supplements the IJ's opinion, we review the IJ's opinion as supplemented by the BIA. *Brucaj v. Ashcroft*, 381 F.3d 602, 606 (7th Cir. 2004). We review the denial of a motion to reopen only for abuse of discretion, *Kay v. Ashcroft*, 387 F.3d 664, 671 (7th Cir. 2004), and under this deferential standard, we uphold the ruling "'unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a race or particular group,'" *Singh v. Gonzales*, 404 F.3d 1024, 1027 (7th Cir. 2005) (quoting *Achacoso-Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir. 1985)).

An order of removal entered *in absentia* can be rescinded on a timely motion to reopen only if the alien did not receive the requisite notice to appear before the IJ, *see* 8 U.S.C. § 1229a(b)(5)(c)(I), or if the failure to appear was due to "exceptional circumstances," *id.* § 1229a(b)(5)(c)(ii). Gonzalez asserts here that *he* never personally received notice of the April 4, 2002, master hearing, but this assertion is irrelevant even if true. Notice delivered to the alien's agent—in this case, Freddy—is notice to the alien. 8 U.S.C. § 1229(a)(2)(A); *Pervaiz v. Gonzales*, 405 F.3d 488, 490 (7th Cir. 2005). Moreover, Gonzalez's suggestion that Freddy did not receive notice of the April hearing is untenable. Gonzalez asserts that documents in his immigration file evidence that notice of that hearing returned to the immigration court undelivered, but his motion to change venue back to Los Angeles from Chicago—which was filed with the Immigration Court in Chicago *after* notice of the April 4 hearing was mailed to the Indiana address—acknowledges the date of the upcoming hearing to be April 4. If, as Gonzalez insists, it was Freddy who drafted and filed the motion to change venue, then at least Freddy had received actual notice of the hearing date because he identified the correct date in the motion. In addition, at oral argument Gonzalez's counsel effectively conceded that what appears to be Gonzalez's signature on the asylum application and both motions to change venue *is* his signature, so Gonzalez's representation that he personally was unaware of the hearing date is particularly suspect.

This case thus comes down to the question of "exceptional circumstances," which are defined by statute as "circumstances (such as serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." 8 U.S.C.

§ 1229a(e)(1). The BIA has interpreted this definition to include deficient performance by counsel among the circumstances that might qualify as "exceptional," *In re Lozada*, 19 I & N Dec. 637, 638-39 (B.I.A. 1988); *see also Magala v. Gonzales*, No. 04-2819, slip op. at 3 (7th Cir. Dec. 27, 2004) ; *Stroe v. INS*, 256 F.3d 498, 500-02 (7th Cir. 2001), but so far the BIA has been unwilling to extend this rationale to incompetence by an alien's nonlawyer agent. Gonzalez submits that fraud committed by a nonlawyer should be viewed the same as legal malpractice, and his position has garnered support from the Third and Ninth Circuits. *See Borges v. Gonzales*, 402 F.3d 398, 408 (3d Cir. 2005) ("[A] finding by the BIA that fraud was visited on [the petitioner] in the manner alleged here is surely an extraordinary circumstance in and of itself and, by definition, 'ineffective assistance.'"); *Varela v. INS*, 204 F.3d 1237, 1239-40, 1240 n.6 (9th Cir. 2000) ("We believe that the fraud perpetrated by [an assistant of petitioner's attorney] is an exceptional circumstance."); *Lopez v. INS*, 184 F.3d 1097, 1100 (9th Cir. 1999) (suggesting that fraud by a non-attorney amounted to an "exceptional circumstance" akin to legal malpractice).

We need not decide whether this court should adopt the position of the Third and Ninth Circuits because Gonzalez's signature on various filings leaves us skeptical of his claim that he was unaware of Freddy's actions. What we deem decisive is that Freddy's conduct, even under the scenario Gonzalez describes, did not cause any prejudice to Gonzalez. This is so because even a lawyer's failure to direct his client to attend a mandatory hearing will constitute "exceptional circumstances" only if the client was prejudiced by not appearing, *see In re Grijalva*, 21 I & N Dec. 472, 474 (B.I.A. 1996); *see also Stroe*, 256 F.3d at 500, and Gonzalez has never explained how he was prejudiced by Freddy's actions. He was living in the United States illegally with no discernable basis for achieving legal status, and his claim for asylum was patently frivolous, *see* 8 U.S.C. § 1158(b)(1)(B)(I) (stating that an applicant for asylum has the burden of establishing that he or she is a refugee and that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant"). Tellingly, counsel does not argue that Gonzalez would have avoided removal—or even that he would have presented a plausible basis for opposing removal—had he attended the April 2002 hearing. Moreover, Gonzalez is virtually silent—just as he was before the IJ and the BIA—as to what relief would be available to him if his motion to reopen had been granted. Gonzalez asserts in his brief that he is eligible for cancellation of removal on the basis that his wife and sons will suffer "exceptional and extremely unusual hardship" if he is removed, but the contention is not explained or developed. We observe, however, that the BIA would not consider hardship to Gonzalez's wife because she, like him, is in the United States illegally,

*see* 8 U.S.C. § 1229b(b)(1)(D); *In re Andazola*, 23 I & N Dec. 319, 323 (B.I.A. 2002), and Gonzalez, whose parents still reside in Mexico, offered nothing in his motion to reopen to establish that his sons would suffer the "exceptional and extremely unusual hardship" necessary to obtain cancellation of removal, *see* 8 U.S.C. § 1229b(b)(1)(D); *compare In re Recinas*, 23 I & N Dec. 467, 473 (B.I.A. 2002) (finding that four United States citizen children would face "exceptional and extremely unusual hardship" if their single mother and sole source of financial and emotional support was removed to Mexico; mother had no family in Mexico and no prospect of finding employment there); *with In re Monreal*, 23 I & N Dec. 56, 64 (B.I.A. 2001) (denying cancellation of removal because alien was in good health and able to support his family of United States citizens while in Mexico).

Accordingly, the petition for review is DENIED.