Anthony DeSILVA, Albert DeSilva, Anthony J. LoBue, and Thomas Kulekowskis, Petitioners–Appellants,

v.

Joseph G. DiLEONARDI, United States Marshal for the Northern District of Illinois, Respondent–Appellee.

Nos. 99–1754, 99–1769.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1999.

Decided June 28, 1999.

Patricia Susan Spratt, Shefsky & Froelich, Chicago, IL, Gregory B. Craig (argued), Williams & Connolly, Washington, DC, for Plaintiffs–Appellants in No. 99–1769.

William A. Barnett, Sr., Chicago, IL, Gregory B. Craig (argued), Williams & Connolly, Washington, DC, for Petitioners–Appellants in No. 99–1754.

David E. Bindi (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Respondent–Appellee.

Before COFFEY, EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Canada has charged petitioners with kidnapping, and a magistrate judge has authorized their extradition for trial. Our prior opinion, 125 F.3d 1110 (1997), recounts the circumstances and concludes that extradition is authorized by our treaty with Canada and appropriate given the

facts. Unexpectedly (at least to us), petitioners are still in the United States two years later, still litigating. Two of the four petitioners sought certiorari from our decision and, although no stay was in force, none was extradited. After certiorari was denied, —— U.S. ——, 119 S.Ct. 42, 142 L.Ed.2d 33 (1998), all four told the district judge that they had more arguments in opposition to extradition. As the United States did not contend that these had been forfeited by their omission on appeal, we authorized the district judge to entertain them—though we called for dispatch, because the events in question occurred in February 1992, and it is long past time for this nation to make a final decision whether the petitioners will be surrendered to Canada. 1998 U.S. App. LEXIS 31354 (Dec. 11, 1998). The district court considered and rejected petitioners' remaining arguments, 1999 U.S. Dist. LEXIS 3317 (N.D.Ill. Mar. 10, 1999), and we accelerated the briefing and oral argument of the ensuing appeals.

A brief recap of the facts suffices. Tammy Wright (known as Tammy DeSilva before her divorce from petitioner Anthony DeSilva) was seriously injured in an auto accident. Unable to care for herself, she was looked after by her parents in Canada so that she could take advantage of its public health care. Anthony decided that Tammy needed to return to Chicago for a medical examination in a civil suit he had filed on her behalf. Anthony set off for Canada, accompanied by his father Albert, two off-duty Chicago police officers (petitioners Kulekowskis and LoBue), and a nurse. The group arrived at the home in Winnipeg at 6:40 A.M. on February 3, 1992. What happened next is disputed, but a trier of fact could conclude that Kulekowskis and LoBue barged in without asking permission and disconnected the telephone line while Anthony and the nurse carried Tammy to the car "crying and kicking." No Canadian official had authorized Tammy's removal from the country, and her mother strongly objected but was unable to stop petitioners from taking her away.

At the U.S. border, Tammy protested that she did not want to go to Chicago "because it is not home," that Anthony had told her that they were just going "for a ride", and that she would rather live with her mother than with Anthony. Customs officials returned Tammy to Canada, which has leveled charges of kidnapping for this episode. See also *Wright v. Touhy*, 1998 WL 157073 (N.D.Ill.1998) (describing civil litigation Tammy has instituted).

Petitioners jointly advance three arguments: that the evidence does not demonstrate probable cause to believe that they acted with the mental state essential to the crime of kidnapping; that the Constitution forbids magistrate judges to make extradition decisions; and that the United States Attorney's role as an advocate of extradition violates the Emoluments Clause of the Constitution because it makes him a de facto officer of a foreign nation. Petitioners LoBue and Kulekowskis make an additional argument: that they received ineffective assistance of counsel in the extradition proceeding.

None of the three arguments advanced by petitioners as a group has been preserved for decision. The last paragraph of our first opinion reported that the probable-cause argument had been abandoned; it is too late to resurrect it, and at all events the argument is insubstantial for the reasons given by the magistrate judge. 881 F.Supp. 1126 (N.D.Ill.1995). Whether petitioners possessed the mental state necessary to conviction is an interesting question, which will be tried in Canada; whether there is *probable cause to believe* that they possessed that mental state is not a close question.

■ The Emoluments Clause argument was not developed in this court. Petitioners direct us to a document filed in the district court, but we have not read it because adoption by reference amounts to a self-help increase in the length of the appellate brief. See *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1430 (7th Cir.

1986). Even when a litigant has unused space (as appellants did not[†]), incorporation is a pointless imposition on the court's time. A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record.

■ As for the contention that either Article III or the Due Process Clause of the Fifth Amendment prevents a magistrate judge from authorizing extradition: this was forfeited when petitioners neglected to make the argument to the magistrate judge himself, and to request that the proceeding be transferred to a district judge. The problem of which petitioners complain (if it is a problem, which we do not decide) readily could have been avoided; five years after the extradition hearing is long past time to protest.

■ At the time of the extradition hearing, petitioners were arguing that an Article III judge *cannot* decide extradition matters, because extradition is not a "case or controversy" under Article III. That contention was pressed vigorously, but ultimately without success, not only in the Northern District of Illinois but also in a collateral attack in the District of Columbia. See 125 F.3d at 1112–13; *LoBue v. Christopher*, 893 F.Supp. 65 (D.D.C.1995), vacated, 82 F.3d 1081 (D.C.Cir.1996). Having lost, petitioners made a 180° turn. Abandoning the view that an Article III judge is constitutionally *forbidden* to participate in the extradition process, they contended that an Article III judge is constitutionally *required*. As petitioners now see things, the tenure and salary guarantees of Article III are essential, lest political pressure or expediency influence an

extradition decision. Too late. Petitioners could choose one side of the required/forbidden line, and they might have been entitled to argue inconsistent positions simultaneously, but they can't present them in sequence.

■ Trying to avoid the effects of their forfeiture, petitioners contend that the magistrate judge lacked "jurisdiction," a shortcoming that may be raised at any time. But in what sense is jurisdiction missing? Extradition proceedings are initiated by the United States, so 28 U.S.C. § 1345 supplies subject-matter jurisdiction to the district court. Congress has authorized magistrate judges to act on behalf of the district court in authorizing extradition. 18 U.S.C. § 3184. Section 3184 also appears to be a second source of subject-matter jurisdiction, so Magistrate Judge Bobrick's role had ample warrant. We know from *Peretz v. United States*, 501 U.S. 923, 936–37, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991), that a party's failure to object to allocation of an issue to a magistrate judge forfeits that position, even if it turns out that the magistrate judge should not have participated. See also *United States v. Wey*, 895 F.2d 429 (7th Cir.1990). *Peretz* retracts any implication of *Gomez v. United States*, 490 U.S. 858, 874–75, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), that an improper assignment of an issue to a magistrate judge is a "jurisdictional" defect in the sense that the parties need not present their contentions to the district court. Even if the Constitution does not allow the assignment of extradition requests to magistrate judges, this does not call *the court's* subject-matter jurisdiction into question; it concerns only

---

† The certificate under Fed. R. App. P. 32(a)(7)(C) represents that the brief contains 13,824 words, only 176 short of the maximum. Our check reveals that the certificate is false. The brief actually includes 15,056 words, substantially over the maximum. Appellants counted only the words in the text of the brief, although Rule 32 provides that "[h]eadings, footnotes, and quotations count toward the word and line limitations." Fed.

R. App. P. 32(a)(7)(B)(iii). Appellants' brief has 20 footnotes with a total of 1,232 words. Counsel must explain why they filed a brief exceeding the type-volume limitation of Rule 32 and made a false representation to the court. They have 14 days to show cause why sanctions should not be imposed for these infractions. See *Westinghouse Electric Corp. v. NLRB*, 809 F.2d 419 (7th Cir.1987).

who within the court should make the decision. In the end, petitioners believe that constitutional arguments can't be forfeited, that a constitutional flaw in a federal statute deprives the court of "jurisdiction." We explained the fallacy of that position in *United States v. Martin*, 147 F.3d 529 (7th Cir.1998), and have nothing to add to its exposition.

■ The DeSilvas now are out of arguments. LoBue and Kulekowskis have one more. They were represented in the extradition proceedings by attorney Joseph Roddy, the only lawyer to enter an appearance on their behalf. Roddy defended their interests vigorously. Nonetheless, they say, attorneys Timothy Touhy and Arthur Engelland also gave advice and assistance, and they believe that these two attorneys labored under a conflict of interest because of the role they had played in the events that preceded the trip to Canada. Touhy and Engelland should have had nothing to do with the defense of the extradition, petitioners contend, a view that Touhy himself now espouses. LoBue and Kulekowskis say that Touhy bungled the job of drafting affidavits that Roddy offered for the proposition that LoBue and Kulekowskis lacked the mental state required for the crime of kidnapping. Moreover, Touhy—perhaps remorseful about the poor legal work that landed the quartet in this mess—paid Roddy's bill. Charity just makes things worse, LoBue and Kulekowskis insist. We shall have nothing to say about whether these events, individually or collectively, amount to ineffective assistance of counsel in the sense that term is used in Sixth Amendment jurisprudence, because the Sixth Amendment does not apply to extradition. *Neely v. Henkel*, 180 U.S. 109, 122, 21 S.Ct. 302, 45 L.Ed. 448 (1901). The United States made this point weakly in the district court, which did enough to preserve it for decision given that Canada, the real party in interest, lacked an opportunity to make a better argument.

■ "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." Extradition, however, is not a "criminal prosecution." Only one "prosecution" is pending against these petitioners, and it is pending in Canada. Extradition is handled under the civil rules. No jury will sit, no elements of the offense will be adjudicated in a speedy and public trial, the accused will not be confronted by the witnesses against them, jeopardy does not attach (meaning that successive efforts to extradite a person do not constitute double jeopardy), and so on. *Collins v. Loisel*, 262 U.S. 426, 43 S.Ct. 618, 67 L.Ed. 1062 (1923); cf. *Puerto Rico v. Branstad*, 483 U.S. 219, 107 S.Ct. 2802, 97 L.Ed.2d 187 (1987).

Extradition is related to criminal proceedings because it determines where a person will be tried. Yet there is no rule that everything related to a criminal case is itself a "criminal prosecution" for purposes of the Sixth Amendment. Thus, for example, a person arrested and held for questioning cannot assert a right to counsel under the Sixth Amendment, *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), even though the questioning may lead to a prosecution. *Moran* concluded that the Sixth Amendment right to counsel does not attach until the "first formal charging proceeding". 475 U.S. at 428, 106 S.Ct. 1135; see also, e.g., *United States v. Gouveia*, 467 U.S. 180, 187–88, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984); *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The United States has not charged petitioners with a crime, and the Sixth Amendment does not offer any protection concerning charges pending in foreign nations. Cf. *United States v. Balsys*, 524 U.S. 666, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998) (possibility that testimony will prove incriminating in a foreign prosecution does not activate the Self–Incrimination Clause of the Fifth Amendment). We therefore agree with *Romeo v. Roache*, 820 F.2d 540, 543–44 (1st Cir.1987), that there is no Sixth

Amendment right to counsel in extradition proceedings. Petitioners say that *In re Burt*, 737 F.2d 1477, 1482–84 (7th Cir. 1984), commits this circuit to a contrary view, but it does not. *Burt* relies on the Due Process Clause of the Fifth Amendment, not the Counsel Clause of the Sixth Amendment—and then only for the purpose of argument.

Perhaps the reader wonders why we are quibbling about the source of a right to counsel. No one proposes to turn a lawyer away at the door of an extradition hearing. Extradition may be civil rather than criminal, but like deportation it can have substantial consequences, so the government must permit the affected parties to obtain legal assistance. The choice between the Fifth and Sixth Amendments matters to an ineffective-assistance claim. Litigants who hire their own counsel in civil cases may not point to their lawyers' gaffes as reasons to rerun the litigation. *Link v. Wabash R.R.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *United States v. 7108 West Grand Avenue*, 15 F.3d 632 (7th Cir.1994). Lawyers who commit malpractice and injure their clients may be sued or disciplined, but this does not prevent enforcement of the judgment. LoBue and Kulekowskis were represented by retained counsel. Although these lawyers did not charge LoBue or Kulekowskis, none of the three was foisted on them by the United States. When the government supplies the lawyer, it must furnish a competent one. Only in criminal cases, and only as an offshoot of the Sixth Amendment, does the incompetence of a privately selected lawyer undermine the validity of the decision. *Cuyler v. Sullivan*, 446 U.S. 335, 342–45, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

Although it is possible to imagine an argument for expanding the principle of *Cuyler* through the Due Process Clause to civil suits in which the government is acting as a prosecutor and the defendant has a strong right to counsel—for example, cases in which the government seeks to take children away from their parents, see *M.L.B. v. S.L.J.*, 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996); *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), or to commit people to mental institutions for extended periods—no similarly potent argument can be made concerning extradition. Permitting the United States to deliver these petitioners to Canada does not deprive them of any legal entitlements. A trial follows, and if petitioners are right about the strength of the evidence they will be acquitted; but if they are wrong, and they did commit the crime of kidnapping, then rerunning the extradition proceeding will do nothing but delay the inevitable. For then a new extradition order will be entered, and petitioners will go to Canada anyway. An inquest into the performance of Touhy, Engelland, and Roddy, in order to decide whether to hold another extradition hearing, makes no more sense than it would to stop a criminal prosecution immediately after the defendants have been indicted, in order to determine whether counsel furnished ineffective assistance in the proceedings leading up to the indictment, with the idea that if counsel was not up to snuff the prosecutor should be told to start from scratch. No court would entertain such a request, and the position advanced by our petitioners is similarly unavailing. Probing the performance of counsel must wait until the end (usually until a collateral attack well *after* the end), when it is possible to assess whether the shortcomings caused prejudice—and "prejudice" means an illegal or unjust final decision, not just a loss at some intermediate step. See *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

More than seven years have elapsed since LoBue, Kulekowskis, and the two DeSilvas removed Tammy Wright from her home in Winnipeg for a trip to Chicago. Our treaty partners are entitled to expect prompt decisions from the United States. Yet a goodly part of the long

delay in resolving the extradition dispute is attributable to the clunky method that federal law creates for resolving these disputes. The United States asks a magistrate judge to authorize extradition under § 3184. Decisions rendered in proceedings under § 3184 are not reviewable on appeal. Instead the person resisting extradition must seek a writ of habeas corpus under 28 U.S.C. § 2241. (That is why the United States Marshal, rather than the United States of America, is the respondent in this case.) When our four petitioners filed their collateral attacks, Anthony DeSilva's petition, together with a joint petition by LoBue and Kulekowskis, were assigned to one judge, while Albert DeSilva's petition went to another. Meanwhile the four petitioners filed a collateral attack in the District of Columbia to make their Article III argument. Thus one magistrate judge, three district judges, and six circuit judges (from two different circuits) have reviewed objections to these petitioners' extradition. Instead of the usual two levels of review in federal cases (decision by the district court with a direct appeal) there have been three (decision by a magistrate judge, with "review" under § 2241 by a district judge, and then three appeals in two circuits), with substantial additional delay during petitioners' quest for a fourth level (rehearing en banc) and a fifth (the Supreme Court).

Congress could simplify matters by amending § 3184 to provide that the decision of a district court pro or con is reviewable only by direct appeal to the court of appeals. For now, however, we will do what we can to bring these extended proceedings to a close. So far as the federal judiciary is concerned, the Secretary of State is today free to extradite the four petitioners to Canada. This court will not entertain an application for a stay pending another petition for a writ of certiorari.

AFFIRMED.