DECISION AND ORDER
 

 MARRERO, District Judge.
 

 Plaintiff Mary Ascione (“Ascione”), a Hispanic female over the age of 40, alleges that her former employer, defendant Pfizer, Inc. (“Pfizer”), denied her promotions and ultimately fired her because of her age, national origin, and gender, in violation of federal and state anti-discrimination laws. Pfizer, moving for summary judgment, denies the allegations and counters that Ascione was caught falsifying her overtime records. Pfizer also moves for summary judgment on its counterclaim alleging that Ascione has failed to return a laptop computer. The Court concludes that Ascione has failed to raise a genuine issue of material fact suggesting unlawful discrimination, and that there is no dispute that Ascione is wrongfully in possession of Pfizer’s laptop computer. Pfizer’s motion is granted.
 

 I. BACKGROUND
 
 [1]
 

 Ascione began working at Pfizer, a pharmaceutical company, in 1990 as an administrative assistant. By all accounts, she performed well at her position. In November 2000, Ascione’s direct supervisor at the time, Stephen Rynkowski (“Ryn-kowski”), formally requested that Ascione be promoted to a position as a manager. According to Pfizer, it denied the request because the department’s budget would not support another managerial position at the time.
 

 In February 2001, Everton Cranston (“Cranston”) was promoted and took over as Ascione’s direct supervisor. According to Ascione, Cranston was promoted instead of her. Upon assuming his new position, Cranston met with each of his new team members, including Ascione. Ascione alleges that in that meeting, Cran-ston told her that he was promoted over Ascione because Ascione was an older, Hispanic woman. According to Ascione, Cranston also told her that Pfizer had also denied a promotion to Cecilia Otero (“Ote-ro”), another Hispanic female over the age of forty under Rynkowski’s supervision, and that he would continue to work on Ascione’s promotion.
 

 In March 2001, Pfizer awarded Ascione an 8 percent salary increase, but did not assign her a new position. Ascione continued to press the issue of her promotion with Cranston throughout early 2001 and Cranston, according to Ascione, kept assuring her that the promotion was on the way. Ascione alleges that sometime in the summer of 2001, Pfizer promoted Carolyn Forte (“Forte”) to manager, instead of As-cione. Ascione contends she was much more qualified than Forte for that position.
 

 In August 2001, Cranston made a formal request to give Ascione her “long overdue” promotion to manager, which Pfizer approved. (Rynkowski Decl. Ex. D). As-cione’s promotion meant that she would no longer be eligible for overtime pay based on an hourly rate; instead, she would be paid at a fixed salary. To determine the appropriate salary, Pfizer reviewed As-cione’s compensation (including overtime) for 2001. Pfizer discovered that, by the
 
 *DCXVII
 
 end of September 2001, Ascione had earned over $63,000 in overtime pay alone, which exceeded her annual salary of $45,357. Thus, Ascione was on pace to earn nearly double her base salary in overtime pay alone.
 

 Pfizer investigated Ascione’s substantial overtime, and determined that she had likely falsified her hours. Ascione used an electronic keycard to gain access to the floor of the building in which she worked, and the security system maintained records of the times at which employees used their keycards. Pfizer found significant discrepancies in Ascione’s reported arrival times and the electronic records of her arrival. Ascione worked in a building which required all persons leaving after 6:30 p.m. to print their names and departure times in a log in the lobby. Even though Ascione reported regularly working late, there is no record that she ever signed the building log. Pfizer also discovered that Ascione often improperly filled out her time sheets to record regular hours as overtime hours.
 

 In October 2001, Rynkowski and Cran-ston confronted Ascione about her excessive overtime. Ascione denied falsifying her time sheets. She explained that she did much of her work from home, and she provided copies of emails she had sent at late hours of the evening. Pfizer determined that those emails did not corroborate the substantial discrepancies and errors in Ascione’s overtime record and fired Ascione.
 

 II.
 
 STANDARD FOR A SUMMARY JUDGMENT MOTION
 

 The Court may grant summary judgment only “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c). The Court must first look to the substantive law of the action to determine which facts are material; “[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if the parties dispute material facts, summary judgment will be granted unless the dispute is “genuine,”
 
 ie.,
 
 “there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.”
 
 Id.
 
 at 249, 106 S.Ct. 2505.
 

 In a case such as this one where the non-moving party would bear the burden of proof at trial, the movant first has the burden to make a
 
 prima facie
 
 case that it is entitled to prevail on the motion.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant can meet this burden by either “submitting] affirmative evidence that negates an essential element of the nonmov-ing party’s claim” or “demonstrating] to the Court that the nonmoving party’s evidence is insufficient to establish an essential element” of the claim.
 
 Id.
 
 After such a showing, the non-moving party must respond with “specific facts showing that there is a genuine issue for trial.” Fed. R.Civ.P. 56(e). To this end, “[t]he non-moving party may not rely on mere conclu-sory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.”
 
 D’Amico v. City of New York,
 
 132 F.3d 145, 149 (2d Cir.1998). In other words, “[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.”
 
 Matsushita Elec.
 
 
 *DCXVIII
 

 Indus. Co., Ltd. v. Zenith Radio Corp.,
 
 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
 

 Throughout this inquiry, the Court must view the evidence in the light most favorable to the non-moving party and must draw all inferences in favor of that party.
 
 See Hanson v. McCaw Cellular Communications, Inc.,
 
 77 F.3d 663, 667 (2d Cir.1996).
 

 III.
 
 DISCUSSION
 

 Title VII of the Civil Rights Act of 1964 (“Title VII”) makes it unlawful for an employer “to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, sex, or national origin .... ” 42 U.S.C. § 2000e-2(a)(l). The Age Discrimination in Employment Act (“ADEA”) makes it unlawful for an employer “to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s age.” 29 U.S.C. § 623(a)(1).
 
 [2]
 

 In cases, as in the one at hand, where the evidence of the alleged wrongdoing is circumstantial rather than direct, courts analyze employment discrimination claims pursuant to Title VII and the ADEA under the familiar burden-shifting analysis set forth in
 
 McDonnell Douglas Corp. v. Green,
 
 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
 
 See Reeves v. Sanderson Plumbing Prods., Inc.,
 
 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To establish a claim for employment discrimination, the plaintiff first “has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.”
 
 Texas Dep’t of Cmty. Affairs v. Burdine,
 
 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). “To meet this burden, a plaintiff must show: (i) membership in a protected class; (ii) qualifications for the position; (in) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination.”
 
 Collins v. New York City Transit Auth.,
 
 305 F.3d 113, 118 (2002) (citations omitted). “[T]he ‘prima facie proof required’ in a given case will depend on the specific facts in question.”
 
 McGuinness v. Lincoln Hall,
 
 263 F.3d 49, 53 (2d Cir.2001) (citing
 
 McDonnell Douglas,
 
 411 U.S. at 802 n. 13, 93 S.Ct. 1817). “Generally speaking, a plaintiffs burden of establishing a prima facie case in the context of employment discrimination law is ‘minimal.’ ”
 
 Collins
 
 305 F.3d at 118 (quoting
 
 McGuinness,
 
 263 F.3d at 53).
 

 If the plaintiff meets this minimal burden, the burden shifts to the defendant to articulate some legitimate, nondiserimi-natory reason for the adverse employment action.
 
 Burdine,
 
 450 U.S. at 253, 101 S.Ct. 1089 (citing
 
 McDonnell Douglas,
 
 411 U.S. at 802, 93 S.Ct. 1817). Finally, if the defendant meets this intermediary burden, “the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.”
 
 Id.
 
 (citing
 
 McDonnell Douglas,
 
 411 U.S. at 804, 93 S.Ct. 1817). Through all steps of this assessment, the evidence the
 
 *DCXIX
 
 plaintiff presents in opposing summary judgment must nonetheless be sufficient to demonstrate the discriminatory intent underlying defendant’s action.
 
 See St. Mary’s Honor Center v. Hicks,
 
 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).
 

 Acione alleges three distinct acts of discrimination: (1) she was denied the promotion in late 2000 which Pfizer gave to Cranston; (2) she was denied the promotion in the summer of 2001 which Pfizer gave to Forte; and (3) she was terminated in late 2001, instead of promoted. Ascione arguably has not even met her minimal burden of making a prima facie case of discrimination because the circumstances of her delayed promotions and ultimate termination likely do not give rise to an inference of discrimination. Taken as a whole, the facts suggest that Pfizer was very pleased with Ascione’s work and was willing to promote her — that is, until it discovered her suspiciously excessive overtime. Whether Ascione has made a prima facie case is ultimately immaterial because the Court concludes that Pfizer’s explanations for its employment decisions are compelling and that Ascione has failed to raise a genuine issue of fact suggesting that discrimination, rather than Pfizer’s stated reasons, motivated those employment decisions.
 

 The Supreme Court has stated that, under the standards explained above, an employer would be entitled to summary judgment if (1) “the plaintiff created only a weak issue of fact as to whether the employer’s reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred”; or (2) if “the record conclusively revealed some other, nondiscriminatory reason for the employer’s decision.”
 
 Reeves,
 
 530 U.S. at 148, 120 S.Ct. 2097. Both descriptions aptly describe the case now before the Court.
 

 In regard to Ascione’s first denial of promotion, Ascione’s only evidence of discrimination is Cranston’s alleged statement to her (which Cranston denied in his deposition), that she was not promoted because she was an older Hispanic woman. Ascione testified at her deposition that the only explanation Cranston gave her for his conclusion was that Otero, another Hispanic woman working under Rynkowski, was also denied a promotion. This evidence is insufficient.
 

 Importantly, it is undisputed that Cran-ston was not responsible for deciding whether Ascione earned a promotion, and hence his conclusion about the reasons for that decision is pure speculation.
 
 Kulak v. City of New York,
 
 88 F.3d 63, 71 (2d Cir.1996) (“Though we must accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor, ..., conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.”). Worse, assuming Cranston made such a statement, it would appear to be a rather poor job of speculation, considering that Rynkowski had already formally requested, in a very positive memorandum, that Ascione be promoted.
 
 [3]
 
 With only a razor-thin connection to any inference of discrimination, and no other explanation or basis, Cranston’s alleged statement is simply too conclusory to be credited.
 
 See Meiri v. Dacon,
 
 759 F.2d 989, 998 (2d Cir.1985) (“To allow a party to defeat a motion for summary judgment by offering
 
 *DCXX
 
 purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.”);
 
 see also Bickerstaff v. Vassar College,
 
 196 F.3d 435, 452 (2d Cir.1999) (“Statements that are devoid of any specifies, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.”).
 

 The Court also rejects Ascione’s claim that she was unlawfully denied the promotion Pfizer awarded to Forte. Ascione offers no reason to suggest that discrimination played a role in that employment decision, except for her subjective testimony that she was more qualified than Forte for the promotion.
 
 See Richetts v. Ashcroft,
 
 No. 00 Civ. 1557, 2003 WL 1212618, at *7 (S.D.N.Y. Mar. 17, 2003) (“[Plaintiffs] own subjective evaluations that she was better qualified than her coworkers are insufficient to demonstrate discrimination.”).
 
 [4]
 
 Moreover, Pfizer approved As-cione’s promotion within about one month of when Ascione alleges she was unlawfully denied the promotion Pfizer gave to Forte. This fact severely weakens the suggestion that Ascione was the victim of employment discrimination.
 

 Ascione’s final claim of employment discrimination — that she was unlawfully terminated at the end of 2001 — must fail as well. The record suggests that Pfizer sought to promote, not terminate Ascione, and that her superiors supported her advancement. With respect to this employment decision in particular, all of the evidence suggests that Pfizer’s decision to terminate Ascione had everything to do with her overtime records and nothing to do with race, age, or gender.
 

 Ascione puts forth several reasons why she contends Pfizer’s investigation of her overtime records was flawed. For example, she alleges that: (1) she did not intend make the errors on her time sheets, and in fact, some of her errors were actually in Pfizer’s favor; (2) she worked from home often; (3) she was never required to sign out of the building; and (4) she often entered the building with other Pfizer employees with keycards (thus calling into question the reliability her keycard records as an indicator of her arrival time). These facts are largely beside the point.
 

 It would be improper for the Court to second-guess Pfizer’s investigation, or make an independent determination as to whether or not Ascione intentionally falsified her time sheets.
 
 See Dale v. Chicago Tribune Co.,
 
 797 F.2d 458, 464 (7th Cir.1986) (“This Court does not sit as a super-personnel department that reexamines an entity’s business decisions.”). As long as Pfizer terminated Ascione because it reasonably
 
 believed
 
 she overstated her overtime records (as opposed to because of a discriminatory reason), and produces some evidence forming the grounds for that belief, Pfizer’s motion must be granted.
 
 See Mohamed v. Marriott Int’l, Inc.,
 
 905 F.Supp. 141, 155 (S.D.N.Y.1995) (holding that the relevant question in employment discrimination cases is whether the employer actually believed the proffered reasons for the adverse employment action);
 
 cf. Graham v. Long Island R.R.,
 
 230 F.3d 34, 44 (2d Cir.2000) (holding that plaintiff fired because of a positive drug test may not recover for employment discrimination where the employer “reasonably relied” on that drug test, even if that reliance turned out to be misplaced). Likewise, the Court need not inquire even whether Ascione
 
 intended
 
 to falsify her overtime records, as long as the Court determines that those records were reasonable basis for Pfizer’s decision, instead of discrimination. See
 
 Pollard v. Rea Magnet Wire Co., Inc.,
 
 824
 
 *DCXXI
 
 F.2d 557, 560 (7th Cir.1987). (“No matter how medieval a firm’s practices, no matter how high-handed its decisional process, no matter how mistaken the firm’s managers, Title VII ... do[s] not interfere ... [ulnless [plaintiffs] race mattered ... ”).
 

 The Court’s review of the record demonstrates that there are indeed substantial irregularities in Ascione’s overtime records. The Court will not speculate as to whether or not all or some of those irregularities may be explained away, and whether or not Ascione intended to defraud Pfizer. What is beyond dispute, in the Court’s judgment, is that these irregularities compellingly support the inference that Pfizer terminated Ascione for its stated reasons and not because of unlawful discrimination. The Court notes, moreover, that the review was conducted by employees within Pfizer’s Corporate Security department, not by any of the decision-makers alleged to have unlawfully discriminated against Ascione. Without any evidence to counter this account of her termination, much less any affirmative evidence that age, gender, or race played a role, Ascione’s case must be dismissed.
 
 [5]
 

 Finally, Pfizer seeks summary judgment on its couterclaim alleging that Ascione is wrongfully in possession of a Pfizer laptop computer. Ascione concedes in her deposition that she still has the laptop. As-cione does not challenge the counterclaim in her memorandum of law, and hence, the motion will be granted.
 

 The Court notes that, buried in a footnote of Ascione’s affidavit, she contends that Pfizer gave her the laptop computer as compensation for certain travel expenses she incurred. Because that point is neither explained, nor brought to the Court’s attention via Ascione’s memorandum of law, the Court will not consider it. “A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record.”
 
 DeSilva v. DiLeonardi,
 
 181 F.3d 865, 867 (7th Cir.1999).
 
 [6]
 

 IV.
 
 ORDER
 

 For the reasons stated, it is hereby
 

 ORDERED that the motion of defendant Pfizer, Inc. (“Pfizer”) for summary judgment with respect to the complaint of plaintiff Mary Ascione (“Ascione”) and for summary judgment with respect to its counterclaim against Ascione is granted, and the Clerk of Court is directed to enter judgment on Pfizer’s behalf; it is further
 

 ORDERED that Ascione return the laptop computer belonging to Pfizer immediately.
 

 
 *DCXXII
 
 The Clerk of Court is directed to close this case.
 

 SO ORDERED.
 

 [1]
 

 . The factual summary is based upon the declarations or affidavits of (1) Tina Hester, dated Jan. 15, 2004; (2) Jerry Zandman, dated Jan. 15, 2004; (3) Terence McCann, dated Jan. 15, 2004; (4) Stephen Rynkowski, dated Jan. 15, 2004 ("Rynkowski Decl.”); (5) Kenneth J. Kelly, dated Jan. 16, 2004; (6) Kristi Kienzle, dated Mar. 26, 2004, and (7) Mary Ascione, dated Feb. 27, 2004, as well as the exhibits attached to those documents. Except where necessary, the Court will not cite these sources further.
 

 [2]
 

 . Ascione also brings her discrimination claims under New York state and New York City anti-discrimination laws.
 
 See
 
 N.Y. Exec. Law § 296-1; N.Y. City Admin. Code § 8-107(l)(a). Courts apply the same analysis to these claims as the federal claims.
 
 See Abdu-Brisson v. Delta Air Lines, Inc.,
 
 239 F.3d 456, 466 (2d Cir.2001) (ADEA);
 
 Cruz v. Coach Stores, Inc.,
 
 202 F.3d 560, 565 n. 1 (2d Cir.2000) (Title VII).
 

 [3]
 

 . In fact, Pfizer has submitted an affidavit stating that Otero
 
 did
 
 receive a promotion to manager in August 2000.
 

 [4]
 

 . Pfizer has submitted an affidavit stating that Forte was not actually promoted.
 

 [5]
 

 . Ascione also asserts a cause of action alleging that Pfizer’s allegations regarding her overtime are defamatory and that she will have to repeat this defamation to future employers. The status of the tort of defamation by "compelled self-publication” is, at best, unclear under New York law. See,
 
 e.g., Metchick v. Bidermann Indus. Corp.,
 
 No. 91 Civ. 2329, 1993 WL 106139, at *4 (Apr. 7, 1993) (discussing uncertainty). Even assuming the tort is available under New York law, Ascione cannot prevail because she has failed to raise a genuine issue of fact to suggest that the alleged defamatory statement — that Pfizer fired her because it believed she falsified her overtime records — is untrue.
 

 [6]
 

 . On a related point, the Court notes that Ascione has attempted to incorporate her affidavit by reference as a substitute for stating the facts of the case in her brief. The Court admonishes counsel from such practice in the future. "[I]ncorporation is a pointless imposition on the court's time” and it also may (as is the case here) thwart the Court's page-limitation rules.
 
 See Arkin v. Bennett,
 
 282 F.Supp.2d 24, 33 n. 4 (S.D.N.Y.2003) (internal quotation marks and citation omitted).